**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

ULYSE LUGO,

                            Plaintiff,               **23-CV-5602 (VEC) (VF)**

            -against-               **AMENDED REPORT AND**
                                        **RECOMMENDATION**

FEDERAL BUREAU OF PRISONS, et al.,

                           Defendants.

-----------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

**To: THE HONORABLE VALERIE E. CAPRONI, United States District Judge.**

       Plaintiff Ulyse Lugo, proceeding pro se, commenced this action on June 29, 2023, against the State of New York, Warden Jane Doe, two Lieutenants John Doe, Acting Captain John Doe, and "MCC Medical Staff." ECF No. 1. On April 8, 2024, Plaintiff filed an amended complaint, naming as defendants the Federal Bureau of Prisons ("BOP"), BOP Health Services, Warden Martha Licon Vitale, Deputy Captain James Healey, Lieutenant Judith Wood, Lieutenant Marquea Rice, Joseph Columbo, Yoon Kang, Rachel Sabatura, and Dr. Robert Beaudouin (collectively, "Defendants"). ECF No. 23. Plaintiff's complaints are construed to assert a tort claim for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, and a claim under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), alleging a Fifth Amendment Due Process violation for deliberate indifference to a serious medical need while incarcerated as a pre-trial detainee at the Metropolitan Correctional Center in Manhattan. Pending before the Court is Defendants' motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), for lack of subject-matter jurisdiction and failure

to state a claim. ECF No. 28. For the reasons set forth below, I respectfully recommend that

Defendants' motion to dismiss be **GRANTED**.

## BACKGROUND

A. **Factual Background**[1]

Plaintiff is currently incarcerated at United States Penitentiary Canaan in Waymart,

Pennsylvania (see ECF No. 16) and is serving an 80-month sentence. See United States v.

Wilson, No. 20-CR-126 (SHS), Dkt. No. 431 at 1-2. Plaintiff's sentence is the result of his

conviction by guilty plea on July 20, 2023, in this District for conspiracy to distribute and

possess with intent to distribute narcotics in violation of 21 U.S.C. § 846. See id. This lawsuit

arises from an altercation on October 22, 2020, between Plaintiff and another inmate at the

Metropolitan Correctional Center ("MCC") in Manhattan, where Plaintiff was detained prior to

his conviction on July 20, 2023. ECF No. 23 at 6; ECF No. 30 at 14.[2]

On October 22, 2020, Plaintiff sustained a three to five-inch laceration to his jaw and

neck during a physical altercation with another inmate at MCC. ECF No. 1 at 4 (stating that

laceration was three to four inches); ECF No. 23 at 7 (stating that laceration was five inches). At

---

[1] The facts recounted herein are taken from Plaintiff's complaint (ECF No. 1) and amended complaint (ECF No. 23). Because Plaintiff is proceeding pro se, I interpret both the complaint and amended complaint together as the operative complaint for purposes of Defendants' motion to dismiss. See Little v. City of New York, No. 13-CV-3813 (JGK), 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); Washington v. Westchester Cnty. Dep't of Correction, No. 13-CV-5322 (KPF), 2015 WL 408941, at *1, n. 1 (S.D.N.Y. Jan. 30, 2015) ("[G]iven Plaintiff's pro se status, . . . the Court will consider facts from the Plaintiff's Complaint . . . that have not been repeated in the Amended Complaint.") (citations omitted). In considering Defendants' motion to dismiss, I have accepted as true all factual allegations in Plaintiff's complaint and amended complaint. See JPMorgan Chase Bank v. Cook, 318 F. Supp. 2d 159, 161 (S.D.N.Y. 2004) ("For purposes of [a] motion to dismiss, the facts in the complaint must be accepted as true.").

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the ECF-generated pagination.

the time of the altercation, staff at MCC had placed Plaintiff in a housing area without ensuring that he would not be housed with another inmate designated as "possible keep separated." ECF No. 1 at 4. Plaintiff asked Defendants Wood and Rice, Lieutenants at MCC, if he was going to the hospital for his injury, but they told Plaintiff that "the acting captain denied [Plaintiff] outside medical clearance" without providing a reason for the denial. ECF No. 23 at 6. The same day he suffered the laceration, Plaintiff was medically examined by Defendant Rachel Sabatura, a Registered Nurse at MCC, who used Dermabond, a liquid skin adhesive, and Steri-Strips, adhesive bandages, to close the wound on Plaintiff's jaw and neck. Id. On the medical report from the incident, Ms. Sabatura mistakenly referred to Plaintiff by the wrong name. Id. During the exam, Lieutenants Wood and Rice, "bashed [Plaintiff] with questions in regard[] to who cut [him] and how." Id. When Plaintiff refused to answer their questions, Wood and Rice "became irate" and called Plaintiff an insulting name. Id.

After the altercation, Plaintiff was housed in the Special Housing Unit ("SHU") at MCC. ECF No. 1 at 5. On October 25, 2020, three days after the incident, Defendant Kang, a Physician Assistant at MCC, visited Plaintiff's cell to examine his wound. ECF No. 23 at 8. During this exam, Plaintiff alerted Kang that his wound was still bleeding. Id. Although Plaintiff pleaded that his wound was still bleeding, Kang informed Plaintiff that he had to wait until the following day, Monday, when the doctor would be at MCC, to be evaluated again. Id. at 7-8.

On October 26, 2020, Plaintiff was brought to medical staff at MCC because his wound was actively bleeding and the staff determined that the "steri strips had been removed" and the "dermabond from the center of the wound had been lifted away from the skin with freshly open wound underneath." Id. at 8. Defendant Dr. Robert Beaudouin, Medical Director at MCC, advised that part of the wound should be sutured and Plaintiff received ten sutures to close his

laceration. Id. Plaintiff was also prescribed a seven-day course of antibiotics because "infection was evident." Id. Dr. Beaudouin signed off on Plaintiff's treatment. Id.

Since the altercation, Plaintiff has experienced heightened Post Traumatic Stress Disorder ("PTSD"), anxiety, and insomnia. ECF No. 1 at 5. The altercation "changed [Plaintiff] as a person not only mentally but also physically" and Plaintiff "will never be or feel the same." Id. Although he does not provide dates, Plaintiff filed a grievance at MCC "while housed in 7south & continued to file while housed in 11north." ECF No. 1 at 7. In his grievance, Plaintiff "stated that [he] was denied proper medical attention." Id. Plaintiff was "denied the ability to move forward with [his] grievance because the federal facility officials did not respond to [his] grievance in a timely manner." Id. After his grievance was "denied," Plaintiff began the process over again but was "notified that without a federal facility officials['] response[,] [he] would be incapable of moving forward with the [g]rievance process." Id.

B. **Procedural Background**

Plaintiff commenced this action on June 29, 2023, alleging that he was "denied [his] constitutional right to a safe environment otherwise known as care, custody, & control" and "was also denied [his] constitutional right to proper medical attention otherwise known as medical negligence." ECF No. 1 at 3. Based on Plaintiff's allegations, I construe Plaintiff to be asserting a claim for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, and a Fifth Amendment Bivens claims for the denial of adequate medical care when he was a pre-trial detainee.[3]

---

[3] In their memorandum of law, Defendants construed Plaintiff to be raising an Eighth Amendment violation. See, e.g., ECF No. 30 at 12-13. But the Eighth Amendment does not apply to claims by pre-trial detainees. See Irizarry v. Manhattan Correctional Ctr., No. 21-CV-5170 (LTS), 2022 WL 375360, at *4 (S.D.N.Y. Feb. 8, 2022) (noting that "[a] federal pretrial detainee's claim for deliberate indifference to his serious medical needs arises under the Fifth

On October 23, 2023, the Honorable Valerie Caproni issued a Valentin Order, dismissing sua sponte the State of New York as a defendant and directing the United States Attorney's Office for the Southern District of New York to identify the John and Jane Doe defendants in the complaint. ECF No. 10 at 1. Judge Caproni directed Plaintiff, within 30 days of learning the identities of the John and Jane Doe Defendants, to file an amended complaint with the named Defendants. ECF No. 10 at 3-4. On February 5, 2024, the U.S. Attorney's Office for the Southern District of New York identified the John and Jane Doe defendants in Plaintiff's complaint. ECF No. 20. On April 8, 2024, Plaintiff filed an amended complaint naming the BOP, BOP Health Services, Warden Martha Licon Vitale, Deputy Captain James Healey, Lieutenant Judith Wood, Lieutenant Marquea Rice, Joseph Columbo, Yoon Kang, Rachel Sabatura, and Dr. Robert Beaudouin as Defendants. ECF No. 23 at 1-2. Plaintiff's amended complaint, while similar to his original complaint, does not have an identical recitation of facts.

On December 18, 2024, Defendants filed a motion to dismiss the amended complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 28-30. In support of their motion to dismiss, Defendants submitted a sworn declaration from John Hayes, a Legal Assistant employed by the BOP. ECF No. 29. On March 11, 2025, following no response by Plaintiff, I directed Plaintiff to respond to Defendants' motion by April 1, 2025, and warned that failure to respond would result in the motion being decided based solely on Defendants' submissions. ECF No. 40. To date, Plaintiff has not filed a response to Defendants' submissions.

---

Amendment's Due Process Clause"). Plaintiff's claim is based on conduct that occurred on October 22, 2020, at a time when Plaintiff had not yet been convicted. See United States v. Wilson, No. 20-CR-126 (SHS), Dkt. No. 431 at 1-2 (noting that plaintiff's conviction by guilty plea was on July 20, 2023). The Eighth Amendment is thus inapplicable.

C.  **Statutory Background of the FTCA**

The FTCA "requires the exhaustion of administrative remedies before an individual can bring suit in district court." Williams v. M.C.C. Inst., No. 97-CV-5332 (LAP), 1999 WL 179604 at *4 (S.D.N.Y. Mar. 31, 1999); Hill v. Tatum, No. 17-CV-04070 (ALC), 2025 WL 918863, at *8 (S.D.N.Y. Mar. 26, 2025). A claim for damages under the FTCA must be "(1) presented to the appropriate federal agency, and (2) either the claim must have been finally denied by the agency in writing, or the agency must have failed to make a final decision on the claim within six months of being filed." Lehal v. United States, No. 13-CV-3923 (DF), 2015 WL 9592706, at *12 (S.D.N.Y. Dec. 29, 2015) (citing 28 U.S.C. § 2675(a)); see also G.T. by Reyes v. Castillo, No. 22-CV-5129 (LJL), 2022 WL 17832539, at *2 (S.D.N.Y. Dec. 21, 2022) (describing steps of administrative exhaustion under the FTCA). To satisfy the first requirement, a claimant "must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth." Romulus v. United States, 160 F.3d 131, 132 (2d Cir. 1998) (citing Keene Corp. v. United States, 700 F.2d 836, 841 (2d Cir. 1983)).

Moreover, exhaustion under the FTCA is a jurisdictional requirement that cannot be waived. Lehal, 2015 WL 9592706, at *12; see also Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) (explaining that the FTCA "requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court" and noting that the requirement is "jurisdictional and cannot be waived"). The plaintiff bears the burden of "both plead[ing] and prov[ing] compliance" with the exhaustion requirement. In re Agent Orange Prod. Liab. Litig., 818 F.2d 210, 214 (2d Cir. 1987); see also Adeleke v. United States, 355 F.3d 144, 153 (2d Cir. 2004) (stating that this "procedural hurdle applies equally to litigants with counsel and to those proceeding *pro se*"). A plaintiff must therefore plead in the complaint that

he has exhausted his administrative remedies. See, e.g., Thompson v. United States, 795 F. App'x 15, 20 (2d Cir. 2019) (summary order) (affirming dismissal for failure to allege exhaustion); Am. United Transp. Inc. v. W. Reg'l Union, 569 F. Supp. 3d 151, 157 (E.D.N.Y. 2021) (dismissing complaint that did not plead exhaustion); Tamares v. United States, No. 07-CV-0688 (PKL), 2009 WL 691002, at *2 (S.D.N.Y. Mar. 17, 2009) (same).

## LEGAL STANDARD

### A. **Federal Rule of Civil Procedure 12(b)(1)**

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks and citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation marks and citation omitted). "The party invoking [the Court's] jurisdiction bears the burden of establishing that jurisdiction exists." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)) (internal quotation marks omitted).

On a motion to dismiss under Rule 12(b)(1), "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001). When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), a court must "accept[ ] all factual allegations as true." Romano v. SLS Residential Inc., 246 F.R.D. 432, 439 (S.D.N.Y. 2007). "However, argumentative inferences favorable to the party asserting jurisdiction should not be

drawn." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (internal quotation marks omitted) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)). Although courts must "liberally construe pleadings and briefs submitted by *pro se* [plaintiffs][,] . . . [a] *pro se* plaintiff[] must [still] establish subject matter jurisdiction." Chakraborty v. Soto, No. 16-CV-9128 (KPF), 2017 WL 5157616, at *6 (S.D.N.Y. Nov. 6, 2017).

B. **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" Green v. Dep't of Educ. of City of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

The Court is obliged to construe pro se pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)); McKithen v. Brown, 481 F.3d 89, 96 (2d. Cir. 2007) (holding that pleadings and

allegations of a pro se plaintiff must be construed liberally in Rule 12(b)(6) motions). But the "special solicitude" afforded pro se litigants, Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotation marks and citation omitted), has its limits—"a *pro se* complaint must state a plausible claim for relief." Hogan v. Fisher, 738 F.3d 509, 515 (2d Cir. 2013); see also Morren v. New York Univ., No. 20-CV-10802 (JPO) (OTW), 2022 WL 1666918, at *12 (S.D.N.Y. Apr. 29, 2022) ("[T]he Court may not invent factual allegations that a plaintiff has not pled.") (internal quotation marks and citation omitted). The "factual allegations [must be] sufficient to raise a right to relief above the speculative level." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008) (internal quotation marks and citation omitted). "Even in a *pro se* case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Because issues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss, the Court has not considered them here. See Morren, 2022 WL 1666918, at *12.

## **DISCUSSION**

### A. **The Federal Tort Claims Act**

#### 1. The United States is the proper defendant.

Plaintiff does not explicitly invoke the FTCA in his complaints. But Plaintiff alleges that Defendants engaged in "medical negligence," because his wound was "treated and tended to with carelessness" and should have been treated with sutures, rather than Dermabond and Steri-Strips. ECF No. 1 at 4-5; ECF No. 23 at 6-7. Negligence claims, even those concerning medical malpractice, made against a federal entity or official are generally asserted under the FTCA. See Irizarry v. Manhattan Correctional Ctr., No. 21-CV-5170 (LTS), 2022 WL 375360, at *4 n.8

9

(S.D.N.Y. Feb. 8, 2022) (addressing plaintiff's claim against MCC that he was "neglected medical attention" under the FTCA). An FTCA claim "against the United States is the exclusive remedy for a suit for damages for injury resulting from the negligent or wrongful act or omissions of any employee of the Government while acting within the scope of his office or employment." Bearam v. Sommer, No. 12-CV-1858 (RJS), 2013 WL 5405492, at *8 (S.D.N.Y. Sept. 25, 2013) (internal quotation marks omitted). I thus construe Plaintiff to be asserting a negligence claim under the FTCA.

A claim under the FTCA may be brought against the United States, but not against individual federal employees or the agency itself. Amador v. United States, No. 20-CV-10492 (PKC), 2022 WL 902783, at *3 (S.D.N.Y. Mar. 28, 2022) ("FTCA claims may be construed as asserted against defendant United States and no other defendant."). Plaintiff did not name the United States as a defendant but the FTCA "requires that the United States be substituted as *the* party defendant" when "officers or employees of any federal agency" acting within the scope of their employment are sued under the Act. See, e.g., B & A Marine Co. v. Am. Foreign Shipping Co., 23 F.3d 709, 713 (2d Cir. 1994) (emphasis in original). Plaintiff sued a federal agency (the BOP) and various employees of the BOP, all of whom appear from the facts of Plaintiff's complaint and amended complaint to have been acting within the scope of their employment at the MCC. The United States should thus be substituted as a defendant. See Fiore v. Medina, No. 11-CV-2264 (RJS), 2012 WL 4767143, at *6 (S.D.N.Y. Sept. 27, 2012) (noting that the court should substitute the United States for the BOP as the defendant in a case involving an FTCA claim and dismiss the FTCA claim against the individual employee).

2.   <u>Plaintiff has not alleged exhaustion of his administration remedies.</u>

Even if the United States were substituted as a party, Plaintiff's negligence claim should be dismissed for lack of subject-matter jurisdiction, because he has failed to allege that he exhausted his administrative remedies, as required by the FTCA.[4] The BOP's records indicate that Plaintiff filed a grievance on March 15, 2021, related to the incident alleged in this lawsuit. ECF No. 29 at ¶ 12; ECF No. 29-1 at 2. Plaintiff also alleges in his complaint that he filed a grievance for the denial of proper medical care. ECF No. 1 at 7. But it appears from the BOP's records that the grievance was filed pursuant to the Administrative Remedy Program, because Plaintiff submitted a form BP-10 to the relevant regional office of the BOP. ECF No. 29 at ¶ 12. According to Mr. Hayes' declaration, "inmates are expressly warned in the Code of Federal Regulations that submission of an administrative tort claim is a separate process from submitting grievances under the Administrative Remedy Program, and that the Administrative Remedy Program does not encompass tort claims." ECF No. 29 at ¶ 17.

To exhaust the administrative remedies for his tort claim, Plaintiff was required to first present his tort claim administratively to the BOP in writing and include the money damages

---

[4] In support of their argument that Plaintiff failed to exhaust his administrative remedies, Defendants rely on a declaration from John Hayes, an employee of the BOP with personal knowledge of the BOP's internal records. ECF No. 29. Exhaustion is a jurisdictional requirement necessary for subject-matter jurisdiction, <u>Celestine</u>, 403 F.3d at 82, and "where subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits." <u>Ray Legal Consulting Grp. v. Gray</u>, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014). Courts thus consider affidavits, like Hayes' affidavit here, where a defendant on a motion to dismiss contends that the plaintiff has failed to plead compliance with an exhaustion requirement. <u>See</u> <u>McIntosh v. United States</u>, No. 15-CV-2442 (KMK), 2018 WL 1275119, at *4, 7 (S.D.N.Y. Mar. 7, 2018) (relying on government's declaration that a review of the database of administrative tort claims filed with the BOP indicates that plaintiff did not exhaust administrative remedies); <u>Jackson v. Stewart</u>, No. 22-CV-7476 (KMK), 2024 WL 3677246, at *5 n.2 (S.D.N.Y. Aug. 5, 2024) (noting that court may consider documents outside of the pleadings to determine whether plaintiff has exhausted his administrative remedies).

sought. See 28 C.F.R. §§ 14.2(a), 543.30, 543.32(g), (i); see also 28 U.S.C. § 2675(a). Next, the administrative tort claim would be submitted to the BOP's regional office in the region where the claim occurred. See 28 C.F.R. §§ 543.30, 543.3l(c). If the inmate has supplied the necessary information in the claim, the BOP will send the inmate an acknowledgment letter. See id. § 543.32(a). The claim must be received by the proper regional office within two years of accrual of the claim. See 28 U.S.C. § 240l(b); 28 C.F.R. §14.2(c). Here, the BOP has no record of Plaintiff submitting any administrative tort claim for a sum certain. ECF No. 29 at ¶ 20; ECF Nos. 29-2, 29-3.

Further, a failure to exhaust administrative remedies for the FTCA claim cannot be excused. See, e.g., Freitas v. Cooper, No. 13-CV-4566 (RA), 2014 WL 494525, at *3 (S.D.N.Y. Feb. 5, 2014) (dismissing complaint where plaintiff failed to plead exhaustion because "the FTCA exhaustion requirement is jurisdictional and cannot be waived") (internal quotation marks omitted); Ford v. Spears, No. 10-CV-1314 (RJD) (LB), 2012 WL 4481739, at *8 (E.D.N.Y. Sept. 27, 2012) (explaining that the "FTCA's exhaustion requirements—unlike those under the PLRA—*are* jurisdictional" and thus "failure to comply will result in dismissal of the complaint") (emphasis in original) (internal quotation marks and citations omitted). Because the FTCA requires administrative exhaustion prior to filing a claim in federal court, and there is no evidence of administrative exhaustion here, the Court does not have subject-matter jurisdiction over Plaintiff's FTCA claim. See Grant v. United States, No. 17-CV-2172 (PGG), 2018 WL 3574865, at *3 (S.D.N.Y. July 25, 2018) (concluding that the court lacked subject-matter jurisdiction over plaintiff's FTCA claims because plaintiff failed to demonstrate that he exhausted his administrative remedies).

Although Defendants request that the complaint be dismissed with prejudice, "prematurely-filed FTCA claims should be dismissed without prejudice, even where those claims would be ripe if re-filed at a later date." Manchanda v. Lewis, No. 21-CV-1088, 2021 WL 5986877, at *5 n.3 (2d Cir. Dec. 17, 2021) (summary order) (citing McNeil v. United States, 508 U.S. 106, 111-13 (1993)); Freitas, 2014 WL 494525, at *4 (dismissing FTCA claim without prejudice and noting that "[t]he proper course of action is [thus] for the district court to dismiss the claims without prejudice to allow the litigant to institute a separate new action once exhaustion has been completed"); see also Katz v. Donna Karan Co., L.L.C., 872 F.3d 114, 121 (2d Cir. 2017) ("[W]hen a case is dismissed for lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to dismiss the case with prejudice."). Therefore, I recommend that Plaintiff's FTCA claim be dismissed without prejudice. See Terry v. U.S. Off. of Pers. Mgmt., No. 16-CV-7475 (CM), 2016 WL 10570946, at *2 (S.D.N.Y. Dec. 23, 2016) (dismissing plaintiff's FTCA claims without prejudice where plaintiff failed to allege any efforts to exhaust administrative remedies).

B. **Constitutional Claim under *Bivens***

Plaintiff alleges that he was "denied [his] constitutional right to proper medical attention." ECF No. 1 at 3. Construing Plaintiff's allegations liberally, Plaintiff appears to be raising a Fifth Amendment claim for deliberate indifference to serious medical needs under Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).[5] See, e.g., Irizarry, 2022 WL

---

[5] In Bivens, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001); see also In re CBS Broad. Inc., No. 23-MC-00080 (ALC) (SDA), 2023 WL 2984423, at *1 n.2 (S.D.N.Y. Apr. 18, 2023) ("A Bivens claim permits a plaintiff to seek money damages from federal employees when they violate a plaintiff's rights under the U.S. Constitution."). Bivens is thus "the federal analog to suits brought against state

375360, at *3 (construing plaintiff's claim that he was neglected medical attention while in

pretrial custody as raising a <u>Bivens</u> claim under the Fifth Amendment Due Process clause);

<u>Carattini v. Behun</u>, No. 21-CV-9373 (NSR), 2024 WL 3274663, at *6 (S.D.N.Y. July 2, 2024)

(noting that plaintiff's claim that defendants failed to give medical attention while plaintiff was a

pretrial detainee is considered under the Fifth Amendment Due Process Clause). For the reasons

set forth below, I recommend that Plaintiff's claim be dismissed.

      1.   Exhaustion of administrative remedies under the PLRA

The PLRA "requires an inmate to exhaust all available administrative remedies before

filing suit in federal court." <u>McCoy v. Goord</u>, 255 F. Supp. 2d 233, 245 (S.D.N.Y. 2003).

Specifically, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as

are available are exhausted." <u>See also</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) (noting that the

exhaustion requirement is "mandatory" and applies to federal inmates suing under <u>Bivens</u>, who

"must first exhaust inmate grievance procedures"); <u>Long v. Lafko</u>, 254 F. Supp. 2d 444, 447

(S.D.N.Y. Apr. 1, 2003) (concluding that prisoner's deliberate indifference claim based on

medical treatment received while incarcerated was barred because prisoner failed to exhaust

available administrative remedies as required by the PLRA); <u>Batista v. Patterson</u>, No. 20-CV-

5688 (JPC), 2021 WL 4429325, at *3 (S.D.N.Y. Sept. 27, 2021) (explaining that the PLRA's

exhaustion requirement applies to claims by inmate about medical treatment while incarcerated);

<u>Sanchez v. Fischer</u>, No. 03-CV-4433 (GBD), 2005 WL 1021178, at *3 (S.D.N.Y. May 2, 2005)

---

officials under . . . 42 U.S.C. § 1983." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 675-76 (2009) (citation
and internal quotation marks omitted).

(noting that the PLRA's exhaustion requirement "mandates exhaustion of all available administrative remedies in instances where an inmate is alleging that prison officials were deliberately indifferent to his or her medical needs").

Although this exhaustion requirement is mandatory and applies to pretrial detainees or convicted prisoners, the requirement is not jurisdictional. Perttu v. Richards, 605 U.S. __ , 2025 WL 1698783, at *5 (2025) (explaining that PLRA exhaustion is not jurisdictional and is an affirmative defense). Thus, a pre-trial detainee "need not plead administrative exhaustion in his complaint." Hickman v. City of New York, No. 20-CV-4699 (RA) (OTW), 2021 WL 3604786, at *2 (S.D.N.Y. Aug. 12, 2021); see also Holmes v. Grant, No. 03-CV-3426 (RJH) (RLE), 2006 WL 851753, at *7 (S.D.N.Y. Mar. 31, 2006) (noting that because exhaustion under the PLRA is not jurisdictional but rather an affirmative defense, the "burden is on the defendant of proving plaintiff's failure to exhaust his administrative remedies"). The Court may nevertheless dismiss a complaint at the pleading stage for failure to exhaust "if the defense 'appears on the face of the complaint.'" Antrobus v. Warden of GVRC, No. 11-CV-5128 (JMF), 2012 WL 1900542, at *2 (S.D.N.Y. May 25, 2012) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1988)). Thus, "courts within this District routinely grant motions to dismiss where a plaintiff's non-exhaustion is clear from the face of the complaint." Hickman, 2021 WL 3604786, at *2 (collecting cases); see Stokes v. de Blasio, No. 17-CV-7890 (JGK), 2019 WL 132279, at *3 (S.D.N.Y. Jan. 8, 2019) (granting motion to dismiss complaint that showed on its face that inmate did not exhaust administrative procedures); Rivera v. Anna M. Cross Ctr., No. 10-CV-8696 (RJH), 2012 WL 383941, at *2 (S.D.N.Y. Feb. 7, 2012) ("If nonexhaustion is clear, a motion to dismiss should be granted.").

To exhaust a claim under the PLRA, a prisoner must "exhaust all 'available' remedies," which means "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." Id. at *3 (italics in original; citations omitted). As is relevant here, the BOP has established the Administrative Remedy Program which allows "an inmate to seek formal review of an issue relating to any aspect of [his] own confinement," and this program "applies to all inmates in institutions operated by the Bureau of Prisons." See 28 C.F.R. § 542.10(a), (b); see also Ritter v. Montoya, No. 20-CV-114 (JGK), 2021 WL 230205, at *2-3 (S.D.N.Y. Jan. 22, 2021) (discussing exhaustion through the Administrative Remedy Program in context of Fourteenth and Eighth Amendment deliberate-indifference claims). At the first step, an inmate "shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, an inmate may submit a formal Administrative Remedy Request within 20 calendar days "following the date on which the basis for the Request occurred" to the Warden of his facility. Id. § 542.14(a). If an inmate is "not satisfied with the Warden's response" to the request, the inmate "may submit an Appeal . . . to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." Id. § 542.15(a). If an inmate is not satisfied with the Regional Director's response, the inmate "may submit an Appeal . . . to the General Counsel within 30 calendar days of the date the Regional Director signed the response." Id. "Appeal to the General Counsel is the final administrative appeal." Id.

It appears from Plaintiff's allegations that he did not exhaust his administrative remedies by completing each step in the Administrative Remedy Program. Plaintiff alleges that he filed a grievance detailing that he was denied proper medical care for the laceration. ECF No. 1 at 7.

But Plaintiff provides no further details to suggest that he completed each step in the Administrative Remedy Program. Additionally, the BOP's computerized inmate management system, which "contains a complete history of administrative remedy filings made by federal inmates at any BOP facility through the Administrative Remedy Program," confirms that Plaintiff submitted a request concerning a grievance over his medical care, but did not complete each step of the process.[6] See ECF No. 29 at ¶¶ 3, 9, 12. The BOP's records indicate that Plaintiff submitted the grievance to the Regional Director (step three of the administrative process), but he did not submit a request to the Warden of his facility (step two of the administrative process) and he did not appeal the Regional Director's decision to the General Counsel's office (the final step in the administrative process). Id. at ¶ 12; see also Batista, 2021 WL 4429325, at *3 (concluding that plaintiff did not sufficiently exhaust requirements under the PLRA where she initiated a grievance but did not timely appeal the Warden's response to the Regional Director).

Plaintiff was required to properly exhaust his administrative remedies under the Administrative Remedy Program before filing this suit. See Gonzalez v. Vargas, No. 15-CV-6035 (WHP), 2017 WL 1082460, at *3 (S.D.N.Y. Mar. 22, 2017) (dismissing Plaintiff's deliberate

---

[6] Courts in this District have held that "[w]here [the] exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein" on a Rule 12(b)(6) motion. Dreyer v. United States Dep't of Just., No. 23-CV-09407 (MKV), 2025 WL 896497, at *5 (S.D.N.Y. Mar. 24, 2025) (citing Levinson v. United States Fed. Bureau of Prisons, Metro. Corr. Ctr. – New York, 594 F. Supp. 3d 559, 566-67 (S.D.N.Y. 2022)). A court can thus take judicial notice of the records and reports of an administrative body, like the BOP's administrative records related to an inmate's grievance, when considering a motion to dismiss. See Murphy v. Rodriguez, No. 23-CV-6998 (KMK), 2024 WL 4290723, at *2 (S.D.N.Y. Sept. 25, 2024) (taking judicial notice of the prison facility's records of plaintiff's grievance and the facility's grievance policy). Finally, to the extent Defendants also seek dismissal under Rule 12(b)(1), the Court may consider evidence outside of the pleadings. Dreyer, 2025 WL 896497, at *5.

indifference claim where he initiated a grievance but "did not proceed beyond the first step for the claims related to his injuries"). If Plaintiff failed to complete each step in the Administrative Remedy Program before commencing this suit, that would violate the PLRA's exhaustion standard. See Corchado v. Carter, No. 21-CV-8984 (VSB), 2022 WL 4096165, at *4 (S.D.N.Y. Sept. 7, 2022) (dismissing inmate's claim because "based on the face of the Complaint, Plaintiff could not possibly have properly exhausted his administrative remedies before filing this lawsuit").

The PLRA excuses an inmate's obligation to exhaust his administrative remedies where such remedies are literally or constructively "unavailable" to the inmate. Ross v. Blake, 578 U.S. 632, 643 (2016); see Pizarro v. Ponte, No. 17-CV-4412 (LGS), 2019 WL 568875, at *4 (S.D.N.Y. Feb. 11, 2019) (explaining that the PLRA "does not require the exhaustion of all administrative remedies, but only those that are available to the inmate") (internal quotation marks omitted). First, an administrative remedy is unavailable when "it operates as a simple dead end," because prison administrators "either lack the necessary authority to provide any relief or possess authority but consistently decline to exercise it. Ortiz v. Annucci, No. 17-CV-3620 (RJS), 2019 WL 1438006, at *8 (S.D.N.Y. Mar. 29, 2019) (quoting Ross, 578 U.S. at 643). Second, an administrative remedy is unavailable where it is "so opaque that it becomes, practically speaking, incapable of use." Ross, 578 U.S. at 643. Put differently, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Hernandez v. Doe 1-7, 416 F. Supp. 3d 163, 166 (E.D.N.Y. 2018). Lastly, an administrative remedy is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Blandon v. Capra, No. 17-CV-65 (KMK), 2017 WL 5624276, at *5 (S.D.N.Y. Nov. 20, 2017) (citing Ross, U.S. at 644).

Plaintiff alleges that he "filed the grievance at M.C.C. while housed in 7south [and] continued to file while housed in 11north." ECF No. 1 at 7. Plaintiff adds that he "was denied the ability to move forward with [his] grievance because the federal facility officials did not respond to [his] grievance in a timely manner." Id. Plaintiff further alleges that "[o]nce denied [he] took it upon [himself] to start the process over again but . . . was then notified that without a federal facility officials['] response [he] would be incapable of moving forward with the Grievance process due to the chain of command or in other words following proper-channels." Id. From these allegations, it appears that Plaintiff may be claiming that the continued pursuit of his grievance would have been futile[7] or that pursuit of his grievance was thwarted by prison officials who did not respond to the grievance.[8]

Construing Plaintiff's allegation that he was prevented from completing the administrative process in the light most favorable to Plaintiff, it appears that a determination that Plaintiff failed to exhaust his administrative remedies cannot be made from the face of the complaint. See Martinez v. Aycock-W., 164 F. Supp. 3d 502, 509-10 (S.D.N.Y. 2016) (concluding that even where plaintiff did not specifically state he complied with each level of grievance or process, his efforts are sufficient to indicate non-exhaustion is not clear from the

---

[7] To the extent Plaintiff is arguing that submitting an administrative grievance was futile, "futility is not established by an inmate's subjective belief that his administrative complaint might be denied." Smith v. United States Dep't of Just., No. 18-CV-03371 (PMH), 2021 WL 2480412, at *6 (S.D.N.Y. June 17, 2021) (internal citation omitted); see also Indelicato v. Suarez, 207 F. Supp. 2d 216, 220 n.3 (S.D.N.Y. 2002) (concluding that "alleged ineffectiveness of the administrative remedies that are available, however, does not absolve a prisoner of his obligation to exhaust such remedies when Congress has specifically mandated that he do so").

[8] Plaintiff filed two grievances through the Administrative Remedy Program (ECF No. 29 at ¶¶ 12-13), indicating that Plaintiff knew of the administrative program and tried to avail himself of it on separate occasions. See Rivera, 2012 WL 383941, at *4 (noting that where the record shows an intimate filed multiple grievances, "it is apparent that a reasonable person of ordinary firmness in [the inmate's] position, as well as [the inmate] himself, would not have thought that administrative remedies were unavailable").

face of the complaint and thus dismissal on that basis would be inappropriate); Rodriguez v. Warden, Metro. Corr. Facility, No. 13-CV-3643, 2015 WL 857817 (PAC) (SN), at *3 (S.D.N.Y. Feb. 27, 2015) (explaining that "failure to exhaust administrative remedies [was] not clear from the face of the complaint" because plaintiff's statements about exhaustion were "ambiguous and somewhat opaque" and there was "no indication that they represent[ed] the entirety of his efforts"); Jones v. Holmes, No. 11-CV-549 (ARR) (JMA), 2013 WL 171217, at *2 (E.D.N.Y Jan. 15, 2013) (finding that failure to exhaust was not "clear from the face of the complaint" where the plaintiff only indicated that he filed a complaint about the incident in question and did not receive a reply, noting that this information only "suggest[ed] that plaintiff may not have exhausted his administrative remedies"). Regardless, because exhaustion under the PLRA is not a jurisdictional requirement, a court may address the merits of a claim where resolving the question of exhaustion raises a factual dispute. See Perttu v. Richards, 605 U.S. __, 2025 WL 1698783, at *5 (2025) (noting that "exhaustion is not jurisdictional, which is why a district court [is allowed] to dismiss plainly meritless claims without first addressing the often more complex question of exhaustion") (internal quotation marks omitted). Here, as discussed below, Plaintiff's claim raises a new Bivens context and, even if not, his allegations do not plausibly state a Fifth Amendment claim for deliberate indifference.

      1. *Bivens* Remedy

In Bivens, the Supreme Court concluded that a federal official may be held personally liable for damages if the official personally violated a plaintiff's constitutional rights. Bivens, 403 U.S. at 395-97. "The elements of a Bivens claim are: (1) that a defendant acted 'under color of federal law' (2) 'to deprive plaintiff of a constitutional right.'" Barbaro v. U.S. ex rel. Fed.

Bureau of Prisons FCI Otisville, 521 F. Supp. 2d 276, 281 (S.D.N.Y. 2007) (quoting Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995)).

The Supreme Court has recognized a Bivens remedy in only three contexts: (1) Fourth Amendment violations involving unlawful searches and arrests, see Bivens, 403 U.S. 388; (2) Fifth Amendment due process violations in employment discrimination cases, see Davis v. Passman, 442 U.S. 228 (1979); and (3) Eighth Amendment violations involving deliberate indifference to prisoners' serious medical needs, see Carlson v. Green, 446 U.S. 14 (1980). Martin v. Mihalik, No. 19-CV-7979 (PMH), 2021 WL 1738458, at *5 (S.D.N.Y. May 3, 2021). "Because a Bivens action is a judicially created remedy, courts proceed cautiously in extending such implied relief." Bal v. U.S. Dep't of the Treasury, No. 21-CV-4702 (OTW), 2023 WL 6517738, at *2 (S.D.N.Y. Oct. 5, 2023).

The Supreme Court has outlined a two-step inquiry to use when considering whether to imply a Bivens cause of action. Hill, 2025 WL 918863, at *4. "First, courts must determine 'whether the case presents a new Bivens context,—i.e., is it meaningfully different from the three cases in which the [Supreme] Court has implied a damages action.'" Id. (quoting Egbert v. Boule, 596 U.S. 482, 492 (2022)) (internal quotation marks omitted). "Second, if a claim arises in a new context, a Bivens remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 596 U.S. at 492 (quoting Ziglar v. Abbasi, 582 U.S. 120, 136 (2017)). However, the Supreme Court clarified in Egbert that "this two-step inquiry often resolves to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." Egbert, 596 U.S. at 483.

As is relevant here, "[t]he Supreme Court has not explicitly recognized a Bivens remedy for deliberate indifference to serious medical needs under the Fifth Amendment." Carattini v. Behun, No. 21-CV-9373 (NSR), 2024 WL 3274663, at *6 (S.D.N.Y. July 2, 2024). And courts in this Circuit disagree as to whether a plaintiff's claim for deliberate indifference to serious medical needs brought under the Fifth Amendment as opposed to a claim under the Eighth Amendment arises in a new Bivens context. Compare, e.g., Bravo v. U.S. Marshals Serv., 684 F. Supp. 3d 112, 125 (S.D.N.Y. 2023) (concluding that deliberate indifference claim under Fifth Amendment would be "apply[ing] Bivens in a new context"); Campbell v. City of Yonkers, No. 19-CV-2117 (VB), 2023 WL 4867459, at *8 (S.D.N.Y. July 31, 2023) (noting that Plaintiff's deliberate indifference to medical needs claim arose out of a new Bivens context because "the claim in Carlson v. Green was brought under the Eighth Amendment, as opposed to plaintiffs' Fifth Amendment claim here.") with Torres v. Licon Vitale, No. 20-CV-3787 (LLS), 2020 WL 3872151, at *3 (S.D.N.Y. July 9, 2020) ("Federal pretrial detainees may bring a Fifth Amendment claim for failure to provide medical treatment as a Bivens action because such a claim bears a strong resemblance to the claim in Carlson."); Mendoza v. Edge, 615 F. Supp. 3d 163, 171 (E.D.N.Y. 2022) (finding that Fifth Amendment deliberate indifference claim bore "an 'extremely strong resemblance' to the Eighth Amendment deliberate indifference claim at issue in Carlson") (citation omitted).

Here, there are meaningful differences between aspects of Plaintiff's claim and the claim in Carlson, that render Plaintiff's claim as arising out of a new Bivens context. In Carlson, the Supreme Court found a violation of "the Eighth Amendment's cruel and unusual punishment clause arising out of prison officials' failure to treat a[ ] prisoner's asthma, which resulted in the prisoner's death." Bravo, 684 F. Supp. 3d at 122 (citing Carlson, 446 U.S. at 16). The misconduct

Plaintiff points to here did not result in death or even serious physical injury. "When a prisoner's injuries were not life threatening or did not constitute a medical emergency, '[c]ourts have routinely found variances in [the] circumstances and severity render deliberate indifference claims different from Carlson and thus arise in a new context.'" Hill, 2025 WL 918863, at *5 (quoting Bettis v. Grijalva, No. 21-CV-7505 (GWG), 2023 WL 4141869, at *6 (S.D.N.Y. June 23, 2023)) (alteration in original); see also Caraballo v. Pliler, No. 21-CV-10476 (PMH), 2023 WL 3467185, at *8 (S.D.N.Y. May 15, 2023) (finding a new Bivens context from Carlson where the alleged conduct "did not result in any serious injury or harm"); Mendoza, 615 F. Supp. 3d at 172 n.2 (explaining that a claim based on a failure to treat an infection arises under a new Bivens context).

Additionally, in Carlson, the plaintiff was treated with medical equipment that was known to be ineffective and was given medication that made his asthma attack more severe. Carlson, 446 U.S. at 16 n.1. Unlike in Carlson, Plaintiff's allegations do not suggest that any defendant "provided affirmatively deleterious treatment to him." Bravo, 684 F. Supp. 3d at 125. In short, Plaintiff's allegations concern conduct that is substantially less severe than that at issue in Carlson and his allegations therefore raise a new Bivens context. Id. (concluding that where allegations of deliberate indifference to medical care were "dramatically less severe than the conduct at issue in Carlson," the claim raised a new Bivens context); Edwards v. Gizzi, No. 20-CV-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022) (concluding that deliberate-indifference claim that staff left a prisoner with an untreated broken arm is a "new context" because being left with a broken arm and "in extreme pain" is "clearly and meaningfully different from a failure to provide life-saving medical care to an inmate with asthma"); see also Bettis, 2023 WL 4141869, at *6 (discussing how courts regularly find that differences in the

"circumstances and severity render deliberate-indifference claims different from Carlson and thus arise in a 'new context'").

Moreover, special factors counsel against implying a new Bivens remedy under the Fifth Amendment. "[W]here there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new Bivens cause of action." Cohen v. United States, No. 21-CV-10774 (LJL), 2022 WL 16925984, at *7 (S.D.N.Y. Nov. 14, 2022) (internal quotation marks omitted). As other courts in this District have concluded, the BOP's Administrative Remedy Program is an alternative remedial scheme, the existence of which counsels against expanding the Bivens remedy. See, e.g., Caraballo, 2023 WL 3467185, at *8 (noting that the existence of the BOP administrative remedy program counseled against extending Bivens to prisoner's deliberate-indifference claim); Rivera v. Fed. Bureau of Prisons, No. 17-CV-05103 (GBD) (DF), 2018 WL 11312146, at *8 (S.D.N.Y. Dec. 14, 2018) (explaining that the BOP's administrative remedy program constituted an alternative remedial scheme counseling against extending a Bivens remedy). Additionally, the passage of the PLRA "15 years after Carlson was decided" also weighs against creating a Bivens remedy. Abbasi, 582 U.S. at 148; see Bettis, 2023 WL 4141869, at *7 (explaining that the passage of the PLRA counsels hesitation in extending a Bivens remedy); Gonzalez v. Hasty, 269 F. Supp. 3d 45, 61-62, 65 (E.D.N.Y. 2017) (concluding that special factors, such as the passage of the PLRA, counsel against extending Bivens remedy for a deliberate-indifference claim).

In sum, even if Plaintiff could plead a valid deliberate-indifference claim under the Fifth Amendment, his claim arises out of a new context and thus lacks a Bivens remedy. But as discussed below, Plaintiff has failed to plead a deliberate-indifference claim under the Fifth Amendment.

> 2.  Plaintiff has failed to plead a deliberate-indifference claim under the Fifth Amendment.

"A federal pretrial detainee's claim for deliberate indifference to his serious medical needs arises under the Fifth Amendment's Due Process Clause." Irizarry, 2022 WL 375360, at *4.[9] As the Second Circuit has made clear, "an unconvicted detainee's rights are at least as great as those of a convicted prisoner." Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). Thus, "the official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference." Id.

"To state a claim for deliberate indifference to serious medical needs, a pretrial detainee must satisfy a two-pronged test: First, 'the alleged deprivation of adequate medical care must be 'sufficiently serious.'" Davis v. McCready, 283 F. Supp. 3d 108, 116 (S.D.N.Y. 2017) (quoting Lloyd v. City of New York, 246 F. Supp. 3d 704, 717 (S.D.N.Y. 2017)). "Second, the defendant must act with a 'sufficiently culpable state of mind.'" Id. (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

To satisfy the first prong where, as here, "a deliberate indifference claim involves a delay in treatment as opposed to a denial of treatment, the analysis of the detainee's medical need 'focus[es] on the challenged delay . . . rather than the prisoner's underlying medical condition

---

[9] Deliberate-indifference claims under the Fifth Amendment are analyzed under the same standard as deliberate-indifference claims under the Fourteenth Amendment. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000) (establishing that claims by federal pretrial detainees under the Fifth Amendment are analyzed in the same manner as Section 1983 claims by state pretrial detainees under the Fourteenth Amendment); Darnell v. Pineiro, 849 F.3d 17, 21 n.3 (2d Cir. 2017) (explaining that analysis of Fourteenth Amendment Due Process claims "should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment"). Cases that consider claims under the Fourteenth Amendment are thus applicable to this analysis.

alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious.'"

Est. of Richards by Stephens v. City of New York, No. 18-CV-11287 (MKV), 2024 WL

3607220, at *11 (S.D.N.Y. July 31, 2024) (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d

Cir. 2003)). Specifically, the seriousness of a delay in medical treatment is determined by

considering the "seriousness of the medical need, . . . whether the delay worsened the medical

condition, and . . . the reason for delay." Ridge v. Davis, No. 18-CV-8958 (JCM), 2022 WL

357020, at *14 (S.D.N.Y. Feb. 7, 2022). "Nonetheless, even absent evidence that a delay in

treatment worsened the detainee's condition, allegations of a 'condition of urgency' that 'may

produce . . . extreme pain' satisfy the objective prong of the analysis." Est. of Richards by

Stephens, 2024 WL 3607220, at *11 (quoting Dotson v. Fischer, 613 F. App'x 35, 38 (2d Cir.

2015)). "Where temporary delays or interruptions in the provision of medical treatment have

been found to satisfy the objective seriousness requirement in this Circuit, they have involved

either a needlessly prolonged period of delay, or a delay which caused extreme pain or

exacerbated a serious illness." Ferguson v. Cai, No. 11-CV-6181 (PAE), 2012 WL 2865474, at

*4 (S.D.N.Y. July 12, 2012).

       To satisfy the second prong, a plaintiff must allege "that an objectively reasonable person

in the defendant's position would have known, or should have known, that the defendant's

actions or omissions posed an excessive risk of harm to the detainee." Est. of Richards by

Stephens, 2024 WL 3607220, at *11. "A detainee must prove that an official acted intentionally

or recklessly, and not merely negligently." Darnell v. Pineiro, 849 F.3d 17, 36 (2d Cir. 2017).

Whether a defendant acted with the requisite state of mind "is a question of fact subject to

demonstration in the usual ways, including inference from circumstantial evidence." Charles v.

Orange Cnty., 925 F.3d 73, 87 (2d Cir. 2019). Where a deliberate-indifference claim rests on the

provision of medical care courts in this Circuit have "limited findings of deliberate indifference to . . . cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years." Est. of Richards by Stephens, 2024 WL 3607220, at *11 (citing Ridge, 2022 WL 357020, at *14).

Here, Plaintiff's allegations do not give rise to a plausible violation of his Fifth Amendment rights.[10] First, the facts in the complaint do not plausibly suggest that Defendant's alleged deprivation of medical care was sufficiently serious to support the first prong of a claim. Plaintiff alleges that his laceration was treated with Dermabond and Steri-Strips by a nurse the same day that the injury occurred. ECF No. 23 at 6. The wound was checked three days later by a physician assistant and the wound was sutured the next day by a doctor. ECF No. 23 at 7-8. Plaintiff does not describe any worsened or permanent harm to his laceration due to the delay between the initial treatment and the sutures. There are thus no facts suggesting that the delay between the Dermabond and Steri-Strips treatment and the sutures worsened Plaintiff's medical condition, caused extreme pain, or created a long-term impact to his jaw. See Morgan v. Shivers, No. 14-CV-7921 (GHW), 2018 WL 618451, at *9 (S.D.N.Y. Jan. 29, 2018) (noting that plaintiff provided no evidence that the delay in treatment caused "extreme pain" or that his "condition[] worsened as a result of the time he waited before being seen by the BOP psychologist and BOP mid-level practitioner"); Est. of Richards by Stephens, 2024 WL 3607220, at *11 (noting that

---

[10] The objective requirement for a deliberate-indifference claim is analyzed the same under the Eighth Amendment and Fifth Amendment. See Young v. Tryon, No. 12-CV-6251 (CJS) (MWP), 2013 WL 2471543, at *7 (W.D.N.Y. June 7, 2013) (noting that "a claim for denial of medical treatment under the Fifth Amendment is analyzed under the same deliberate indifference test as a claim arising under the Eighth Amendment"); Cuoco, 222 F.3d at 106 (explaining that Eighth Amendment deliberate indifference test applies to a Bivens Fifth Amendment action). Cases that consider claims under the Eighth Amendment are thus applicable to this analysis.

"courts have consistently rejected deliberate-indifference claims" where there is no evidence that "plaintiff's pain or medical condition worsened as a result" of the delay); Hamilton v. Westchester Dep't of Corr., No. 19-CV-3838 (KMK), 2020 WL 4271709, at *6-7 (S.D.N.Y. July 23, 2020) (concluding that plaintiff failed to state a claim for deliberate indifference due to unreasonable delay in care where none of Plaintiff's allegations suggested that he was experiencing "a life-threatening and fast-degenerating condition"); Jones v. Westchester Cnty., 182 F. Supp. 3d 134, 155 (S.D.N.Y. 2016) (collecting cases and noting that plaintiff's allegations of general "severe pain and injuries to his knee, hip, and back" were not severe enough to state a claim for deliberate indifference based on delay in medical care) (internal quotation marks omitted); cf. Grimmett v. Corizon Med. Assocs. of N.Y., No. 15-CV-7351 (JPO) (SN), 2017 WL 2274485, at *4 (S.D.N.Y. May 24, 2017) (noting that plaintiff established first prong where he pleaded that "delay in care allowed the infection in [his] gums to fester and develop into a full blown painfully agonizing oral abscess, and resulted in hearing loss") (internal quotation marks and citations omitted).

Turning to the second prong, Plaintiff does not plead any facts from which to plausibly infer that Defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." Darnell, 849 F.3d at 35. Plaintiff alleges that "[a]llowing [him] to be sent to the hospital would've prevented [his] wound from being treated and tended to with carelessness" and that the wound required sutures. ECF No. 23 at 6. Although Plaintiff disagrees with the choice of treatment he received, "it is well settled that disagreement with a chosen course of treatment is not a basis for a claim of constitutionally inadequate medical care." Yousef v. Cnty. of Westchester, No. 19-CV-1737 (CS), 2020 WL 2037177, at *7 n.8 (S.D.N.Y. Apr. 28, 2020) (denying plaintiff's deliberate-

indifference claim based on his disagreement with choice of medical care); Ramirez v. Tatum, No. 17-CV-7801 (LGS), 2018 WL 6655600, at *8 (S.D.N.Y. Dec. 19, 2018) (dismissing plaintiff's Fifth Amendment deliberate-indifference claim against prison nurse where she failed to diagnosis him with hernia, noting "[a] misdiagnosis by a medical professional, without more, is not a basis for a claim for deliberate indifference); Marley v. United States, No. 18-CV-3495 (EK) (RML), 2022 WL 1183330, at *7 (E.D.N.Y. Apr. 20, 2022) (concluding that defendants did not act with deliberate indifference where plaintiff alleged defendants were "negligent and failed in their duty to provide [him] adequate medical care" and chose "to follow an inefficacious course of treatment"); Murray v. Orange Cnty., No. 18-CV-0442 (NSR), 2020 WL 3450782, at *4 (S.D.N.Y. June 23, 2020) (dismissing claim of deliberate indifference where plaintiff asserted that BOP doctor should have referred him to a specialist after initial care, noting that "mere disagreement with course of treatment does not rise to the level of a medical indifference claim"). And there are no allegations to plausibly suggest that the refusal to take Plaintiff to the hospital caused him extreme pain or permanent damage to his jaw.

In short, Plaintiff's allegations do not plausibly suggest that any Defendant acted with recklessness or deliberate indifference to Plaintiff's medical needs. On the contrary, Plaintiff's wound was treated the day of his injury (ECF No. 23 at 6), and he was taken to see a doctor within a day of reporting the bleeding. Id. at 7-8. Plaintiff was also given antibiotics to treat any potential infection after he was sutured. Id. at 8; see also Stewart v. City of New York, No. 15-CV-4335 (RA), 2018 WL 1633819, at *9 (S.D.N.Y. Mar. 31, 2018) (dismissing deliberate indifference claim where defendants "took various steps to alleviate [plaintiff's] pain and discomfort" such as providing pain medication and antibiotics). Even if Plaintiff's allegations suggested negligence, "[a] plaintiff must show something more than mere negligence to establish

deliberate indifference" in the due process context. <u>Charles</u>, 925 F.3d at 87 (internal quotations

omitted); <u>Irizarry</u>, 2022 WL 375360, at *4 (dismissing Fifth Amendment deliberate-indifference

claim where plaintiff alleged he was "neglected medical attention many times" but did not plead

any facts to show defendants acted with the requisite state of mind); <u>Davis</u>, 283 F. Supp. 3d at

122-23 (dismissing plaintiff's deliberate-indifference claim for failure to prescribe plaintiff pain

and asthma medication, noting that allegations amounted to nothing more than negligence);

<u>Vazquez</u>, 2014 WL 3887880, at *6 (dismissing deliberate-indifference claim and noting that

"denial of access to asthma medication when a detainee is in custody and not suffering from

an asthma attack amounts to negligence, not deliberate indifference"); <u>see also</u> <u>Gonzalez v.</u>

<u>Hannah</u>, No. 19-CV-1522 (VLB), 2020 WL 3256869, at *6 (D. Conn. June 16, 2020)

(dismissing claim and noting that plaintiff's allegation that the nurse "did not adequately assess

the severity of his injury and determine that the injury required sutures . . . evinces negligence at

most" not recklessness or deliberate indifference).

* * *

A pro se plaintiff should generally be given an opportunity to amend a complaint to cure

its defects unless amendment would be futile. <u>See</u> <u>Hill v. Curcione</u>, 657 F.3d 116, 123-24 (2d Cir.

2011); <u>Boykin v. Moreno</u>, No. 17-CV-6869 (KMK), 2019 WL 1367606, at *7 (S.D.N.Y. Mar. 26,

2019) (noting that "[e]ven pro se plaintiffs are not entitled to amend a complaint if the complaint

'contains substantive problems such that an amended pleading would be futile'"). "Futility is a

determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies

or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." <u>Pyskaty v. Wide</u>

<u>World of Cars, LLC</u>, 856 F.3d 216, 224-25 (2d Cir. 2017) (citing <u>Panther Partners Inc. v. Ikanos</u>

<u>Commc'ns, Inc.</u>, 681 F.3d 114, 119 (2d Cir. 2012)). Accepting all facts in the complaint as true,

Plaintiff's allegations concerning his medical treatment in October 2020 fail to state a claim under the Fifth Amendment. See Carr v. Canty, No. 10-CV-3829 (JPO), 2012 WL 3578742, at *4 (S.D.N.Y. Aug. 16, 2012) (noting that leave to amend would be futile where plaintiff's allegations amounted to, at best, negligence); see also Schlosser v. Elzea, No. 19-CV-1380 (SRU), 2020 WL 887752, at *6 (D. Conn. Feb. 24, 2020) (dismissing deliberate indifference claim with prejudice where plaintiff's claims "establish[ed] that the defendants acted, at most, negligently"). And, as discussed, Plaintiff lacks a Bivens remedy. Leave to amend would thus be futile. See Bravo, 684 F. Supp. 3d at 126 (noting leave to amend would be futile where plaintiff lacked a Bivens remedy for deliberate-indifference claim).

    In his complaint, Plaintiff also states that he "was denied [his] constitutional right to a safe environment." ECF No. 1 at 3. Plaintiff bases this on his allegation that he was placed in a housing area without ensuring that he would not be housed with another inmate designated as "possible keep separated." Id. at 4. Plaintiff does not include any facts concerning the inmate who attacked him or the circumstances of the attack.[11] Plaintiff does not provide any facts necessary to plausibly allege that he was incarcerated under conditions that posed a substantial risk of serious harm. For instance, Plaintiff does not provide information concerning his history with the inmate who assaulted him, any prior violent interactions with that inmate, how long he was housed with the inmate, whether the prison staff who placed him with the inmate were aware

---

[11] In their opposition brief, Defendants do not address Plaintiffs' allegation concerning the other inmate and Defendants do not suggest that Plaintiff is asserting a claim based on the denial of a safe environment while incarcerated. Although Plaintiff's allegations are sparse, construed liberally Plaintiff appears to be raising a failure-to-protect claim under the Fifth Amendment. See Kaid v. Tatum, No. 20-CV-3643 (JLR) (SLC), 2024 WL 946949, at *12 (S.D.N.Y. Jan. 24, 2024), adopted as modified, 2024 WL 639331 (S.D.N.Y. Feb. 15, 2024) (construing pretrial detainee's claim that BOP staff failed to keep him safe from an attack by another inmate as a Fifth Amendment failure-to-protect claim).

of his history with the inmate, or whether he alerted the staff that he feared for his safety. <u>See,</u>

<u>e.g.</u>, <u>Ruiz v. Westchester Cnty.</u>, No. 18-CV-7007 (KMK), 2020 WL 4340788, at *6 (S.D.N.Y.

July 28, 2020) (noting that even plaintiff's allegation that prison staff were in possession of the

"keep separate" list that purportedly noted that plaintiff and attacker should not be placed in the

same holding cell was not enough to state a claim because plaintiff did allege that staff knew

they should have checked the list, or had outside reason to know about plaintiff and attacker's

history); <u>Haslinger v. Westchester Cnty.</u>, No. 18-CV-05619 (PMH), 2021 WL 6198058, at *5

(S.D.N.Y. Dec. 22, 2021) (noting that plaintiff failed to provide facts that defendants acted with

deliberate indifference such as "evidence of a previous altercation between a plaintiff and an

attacker, coupled with a complaint by a plaintiff regarding the altercation or a request by a

plaintiff to be separated from the attacker"); <u>Albritton v. Morris</u>, No. 13-CV-3708 (KMK), 2016

WL 1267799, at *13 (S.D.N.Y. Mar. 30, 2016) ("[W]hen an inmate informs correction[ ] officers

about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim of

failure to protect.").

      Due to the sparseness of the factual allegations in the complaint underlying this potential

claim, I cannot say for certain that amendment would be futile as it relates to a potential failure-

to-protect claim. However, courts have consistently held that a <u>Bivens</u> remedy is unavailable for

a failure-to-protect claim. <u>See, e.g.</u>, <u>Ballard v. Dutton</u>, No. 23-6416, 2024 WL 4039606, at *1-2

(2d Cir. Sept. 4, 2024) (holding that a <u>Bivens</u> remedy is not available for a failure-to-protect

claim where the plaintiff asserted that a lieutenant failed to protect him from an assault by

another inmate); <u>Cannenier v. Skipper-Scott</u>, No. 18-CV-2383 (LGS), 2019 WL 764795, at *5

(S.D.N.Y. Feb. 20, 2019) (dismissing failure-to-protect claim and noting a failure-to-protect

claim has not been recognized in <u>Bivens</u> context); <u>Kaid</u>, 2024 WL 946949, at *12 (concluding

that a failure-to-protect claim "does not present a cognizable <u>Bivens</u> claim"); <u>Herrera v. United States</u>, No. 20-CV-10206 (PKC), 2022 WL 902090, *8 (S.D.N.Y. Mar. 27, 2022) (declining to extend <u>Bivens</u> to a failure-to-protect claim). As such, to the extent Plaintiff is raising a failure-to-protect claim, dismissal should be with prejudice because he does not have a <u>Bivens</u> remedy. <u>See Kaid</u>, 2024 WL 946949, at *18 (dismissing failure-to-protect claim with prejudice because no <u>Bivens</u> remedy existed).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's FTCA claim be

dismissed without prejudice and Plaintiff's <u>Bivens</u> claim be dismissed with prejudice.

**SO ORDERED.**

DATED:        New York, New York
              July 28, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge


## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. <u>See also</u> Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to the Honorable Valerie E. Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a), 6(b), 6(d); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).**